JAMES W. MANGANO *vs.* TOWN OF WILMINGTON.

No. 98-P-1928.

Middlesex. March 7, 2001. - June 13, 2001.

Present: JACOBS, GILLERMAN, & CYPHER, JJ.

*Contract,* Sale of real estate, Bidding for contract, Offer and acceptance. *Municipal Corporations,* Property. *Practice, Civil,* Declaratory proceeding.

A town that had sought to sell real property owned by it in accordance with the provisions of G. L. c. 30B, the State procurement statute, was not prohibited by that statute from withdrawing the property from the bidding process after receipt of bids; thus, in a declaratory judgment action brought by the highest bidder, where the parties had not reached the point where an enforceable agreement for the purchase and sale of the property had come into existence, the bidder could not require that the town accept his bid or convey the real property to him. [859-861]

CIVIL ACTION commenced in the Superior Court Department on May 8, 1998.

The case was heard by *James F. McHugh, III,* J., on motions for summary judgment.

*Luke Stanton* for the plaintiff.

*Barry M. Altman* for the defendant.

CYPHER, J. In his complaint for declaratory relief, James W. Mangano sought a declaration that the town of Wilmington (town) wrongfully withdrew certain real property from the bidding process and therefore the town should be ordered to accept his bid. Both parties filed motions for summary judgment and a Superior Court judge ruled in favor of the town and dismissed Mangano's complaint. We conclude that Mangano cannot force the town to accept his bid.

*Facts.* The essential facts are undisputed. A vote was taken at a Wilmington town meeting to transfer a parcel of land on Rollins Road to the board of selectmen (board) so that the town

could sell the property in accordance with the provisions of G. L. c. 30B, the State procurement statute. The town published a "Request for Proposals — Dispositions of Town-Owned Land" in the local newspaper, seeking bids for the property. The request stated that the fair market value of the property was $8,850, that the disposition was to be in accordance with G. L. c. 30B, and that "[t]he Town reserves the right to reject any and all proposals."[1] The formal "Request for Proposals (Bids)" provided to prospective bidders did not contain the town's reservation of the right to reject proposals. The request simply stated that "[t]he comparative criteria for selection of the bidder is [*sic*] price. The disposition will be made to the bidder who meets the minimum criteria and offers the highest price."[2] The request specified that after selection of the highest responsive bidder by the town manager, the parties would execute a purchase and sales agreement contingent upon the bidder securing financing and closing on the property within sixty days after the bid was selected.

The town received three bids. The first and second bids, submitted by an abutter to the Rollins Road parcel, were for $8,901 and $10,001 and were one week apart. The third and highest bid was received from Mangano for $10,120.

On October 14, 1997, before a bid had been selected but after the bids had been opened, the board held a meeting. At the meeting, the town manager recommended that the town retain the property because "the sale of the property may result in the creation of a hardship for property owners in the neighborhood." The board then voted "to refrain from disposing of the [parcel] on Rollins Road with the understanding that should the bidding parties request that the Board reconsider their vote at the next

---

[1]We need not consider Mangano's claim on appeal that he was unaware of the reservation in the newspaper notice because that claim was not made below. Further, the point is neither established by the summary judgment submissions nor relevant to the analysis. See, e.g., *Cumberland Farms, Inc.* v. *Montague Economic Dev. & Ind. Corp.*, 38 Mass. App. Ct. 615, 618 (1995) (notice deemed sufficient when municipal development corporation gave notice of plan in various publications and through public forums as required by law).

[2]Mangano does not argue that the statements in the request that disposition would be made to the highest bidder changed the nature of the invitation for proposals to an offer.

meeting, the Board will do so." No such request was made. The next town meeting warrant contained an article concerning whether the town would rescind and revoke the action it had taken to authorize the sale of the property. The record does not indicate what, if any, action was taken at the town meeting, or whether Mangano pursued the issue.

*Discussion.* General Laws c. 30B, § 16, authorizes governmental bodies to put real property out to bid. The purpose of bidding statutes such as c. 30B is "to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally." *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 691-92 (1982). See *Datatrol, Inc.* v. *State Purchasing Agent*, 379 Mass. 679, 696 (1980).

Mangano points out that there is no language in the statute authorizing the governmental body to reject all bids for property placed on the market for sale. He contends that the absence of such language means that the Legislature did not intend to permit the withdrawal of the property from the bidding process after receipt of bids. In support of this position, Mangano points to § 9 of c. 30B, which specifically allows the cancellation of an invitation to bid for personal property or services. It is not disputed that § 9 is confined to personal property or services and that real estate does not fall within either category.

The omission from c. 30B of language authorizing the withdrawal of real property from the bidding process does not prohibit the town from withdrawing the property from bid. The town has broad power to control and dispose of real property on the terms and conditions it deems appropriate. General Laws c. 40, § 3, permits a town to convey real estate "by a deed of its selectmen . . . duly authorized." See *Gennari* v. *Revere*, 23 Mass. App. Ct. 979, 979 (1987); Randall & Franklin, Municipal Law and Practice § 1194 (4th ed. 1993). There is nothing in the common law or the General Laws requiring a municipality to transfer land to the highest bidder. *Gennari*, 23 Mass. App. Ct. at 979. See G. L. c. 39, § 1; G. L. c. 40, §§ 1 & 3.

"[W]e may not, by process of construction, add a prohibition to a statute when it is not contained therein." *J.F. White Contracting Co.* v. *Massachusetts Port Authy.*, *ante* 811, 815

(2001). See *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 839-840 (1984) (public bidding "statutes must be interpreted as enacted and statutory omissions cannot be supplied by the court"); *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999) (court will not read into a statute a provision which Legislature did not see fit to put there).

Furthermore, G. L. c. 30B, §§ 5(*g*) and 9, which detail the procedure the procurement officer is to use in the event no bids are accepted for goods or services, have not been interpreted to require that a contract be awarded; only that if it is awarded at all, that it be awarded to the "[highest] responsible and responsive bidder." *Vining Disposal Serv., Inc.* v. *Board of Selectmen of Westford*, 416 Mass. 35, 38 (1993). Cf. *United States ex rel. Goldberg* v. *Meyer*, 37 App. D.C. 282, 288 (1911) (statute which did not specify that vessel could be withdrawn from the market did not require that vessel be sold to highest bidder, but only that it be offered for sale in a particular manner and if sold that it be delivered to the purchaser).

The request for bids was merely a solicitation for offers.[3] See *Whiting* v. *Commonwealth*, 370 Mass. 664, 669 (1976). See also *Hunt* v. *Rice*, 25 Mass. App. Ct. 622, 627 (1988) (where seller invited bids, the bids were offers which the seller was at liberty to accept or reject). No steps were taken by the town which could be interpreted as an acceptance of Mangano's offer. See *Dunham* v. *Boston*, 12 Allen 375, 377 (1866) (no contract where municipal board voted to recommend sale of a parcel of land, vote was approved by the mayor, and the city solicitor prepared the deed, but the deed was not signed because alderman objected); *Edge Moor Bridge Works* v. *County of Bristol*, 170 Mass. 528, 531-533 (1898) (no contract where county commission had invited bids for a project, accepted the bid of the plaintiff, notified the plaintiff of the acceptance but then refused to execute a contract for construction, because "[t]he vote was

---

[3]Generally, only if an invitation for bids specifically states that an auction is "positive" or "without reserve" and the terms of the sale are included in the invitation, is the seller bound to accept the highest offer. *Curtis* v. *Aspinwall*, 114 Mass. 187, 191-192 (1873). *Weinstein* v. *Green*, 347 Mass. 580, 582 (1964). *Hunt* v. *Rice*, 25 Mass. App. Ct. 622, 622, 627 (1988). Cf. *Palmer* v. *Inhabitants of Haverhill*, 98 Mass. 487, 489 (1868). See Uniform Land Transactions Act § 2-207 (1975).

but a step in the negotiation . . . [and] execution of the contract was an act to be done in the future"); *Al's Lunch, Inc.* v. *Revere*, 324 Mass. 472, 474-476 (1949) (no contract found where city council voted to authorize the city solicitor to take further steps toward sale of real estate, even where vote was communicated to plaintiff). Compare *Whiting*, 370 Mass. at 672 (contract found where commissioners voted to approve and accept bid, communicated acceptance to bidder, and requested and received balance of bid); *Hunt*, 25 Mass. App. Ct. at 627 (sellers accepted bid offer by congratulating highest bidder, returning checks to other bidders, depositing check of highest bidder, and signing purchase and sale agreement).

*Conclusion.* General Laws c. 30B, § 16, does not curtail the power of the town to choose whether to accept an offer. The parties had not reached the point where an enforceable agreement for the purchase and sale of the real property had come into existence. Mangano cannot, therefore, require that the property be transferred.

When a complaint requests declaratory relief, the court should ordinarily declare the rights of the parties, rather than dismiss the action. *Gennari*, 23 Mass. App. Ct. at 980. Accordingly, the judgment of dismissal is to be vacated and a new judgment shall be entered declaring that the town of Wilmington is not required to accept the bid of, or to convey the real property in issue to, James W. Mangano.

*So ordered.*