Sikora, J.
RULING
Upon consideration of the complaint and of all opposition material and of oral argument presented at the hearing of September 27, 2004, the court hereby DENIES defendant Mahlowitz’ motion for dismissal *459 pursuant to Mass.RCiv.P. 12(b)(6) and pursuant to G.L.c. 231, §59H.
REASONING Rule 12(b)(6) Analysis
1. (a) A complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim “unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting from Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The motion judge must accept as true all well pleaded allegations of the complaint and all reasonable inferences generated by those allegations. Nader, 372 Mass, at 98 (authorities collected).
(b) The plaintiff need only surmount “a minimal hurdle to survive a motion to dismiss for failure to state a claim.” Bell v. Mazza, 394 Mass. 176, 184 (1985). Dismissals on the basis of pleadings “before the facts have been found, are discouraged.” Gennari v. City of Revere, 23 Mass.App.Ct. 979, 980 (1987) (authorities collected).
2. In this action, the plaintiffs, and especially the corporate plaintiff Millennium Equity Holdings, LLC, allege that the defendant attorney, Edward Mahlowitz, in the course of his representation of the former Mrs. Rabinovitz in a divorce proceeding against her then husband David Rabinovitz (a co-plaintiff here), sought and obtained a lien against Millennium Equity Holdings, LLC in the divorce proceeding; and that he did so not with an intent to advance the merits of his client’s position upon the merits of the divorce proceedings, but rather with the ulterior and improper intent to assert pressure or leverage upon Mr. Rabinovitz; that the attachment and lien achieved by attorney Rabinovtiz disrupted a favorable sale of real property by the corporation and drove it into bankruptcy protection and consequent substantial financial losses. The plaintiffs allege in the complaint that Mahlowitz knew that the attachment and lien were “improper, excessive, and would halt the sale” of the real property.
3. In paragraphs 41 through 44 of the complaint, the plaintiffs allege that Mr. Rabinovitz had notified Mrs. Rabinovitz of the harm inflicted by the continuing attachment lien; that Mrs. Rabinovitz had assured him that she had communicated those concerns to attorney Mahlowitz and had “requested [that] he remove the lien”; that Mahlowitz had failed and refused to remove the lien in a timely manner; and that Mahlowitz was well aware that the continuation of the lien “would better [his] client’s settlement.”
4. The plaintiffs characterize Mahlowitz’ conduct as (a) abuse of process; (b) malicious prosecution of a civil action; and (c) intentional interference with a contract.
5. Counsel for Mahlowitz appears to argue (although without specific citation to the relevant authorities) that the attorney’s actions in the divorce proceeding constituted a zealous representation of a client immunizing Mahlowitz from damages liability in tort. For this doctrine, see generally Doe v. Nutter, McClennen & Fish, LLP, 41 Mass.App.Ct. 137, 140-41 (1996), and cases cited.
6. However, two obstacles presently obstruct allowance of a 12(b)(6) dismissal. One is factual, the other is doctrinal.
(a) Paragraphs 41 through 44 of the complaint effectively allege (either directly or by veiy reasonable inference) that attorney Mahlowitz acted in excess of, or in contradiction of, the wishes or instructions of his client, Mrs. Rabinovitz, by his extended imposition of the attachment lien upon Millennium Equity Holdings, LLC. If Mahlowitz did act beyond, or in conflict with, the instructions of his client, he may have left the protected zone of representation of his client and may have exposed himself to liability in tort for damages.
(b) Independently, and as a matter of doctrine, some doubt presently remains about the state of Massachusetts law upon this issue. In Beecy v. Pucciarelli, 387 Mass. 589, 593-94 &n.7 (1982), the Supreme Judicial Court found it unnecessary to determine whether an attorney in Massachusetts possessed absolute immunity in tort for actions of malicious prosecution of a civil action in behalf of a client. At the same time, it recognized the “present view of many courts . . . that an attorney is not absolutely immune from liability for malicious prosecution actions . ..” The SJC recounted that those courts furnish only qualified immunity as a balance between the interest in unfettered access to the courts for clients of aggressive attorneys on the one hand, and the policy against the allowance of attorneys “to bring with impunity suits for harassment, vexation or coercion of an unwarranted settlement” on the other. Id. at n.7. Here, the plaintiffs do allege that veiy tort of malicious prosecution of a civil action and the kindred claim of abuse of process. So specific a reservation of judgment upon this point of law leaves it open at this time.
7. For these reasons of fact and law, I cannot conclude in accordance with the requirements for 12(b)(6) that it appears beyond doubt that the plaintiffs here can prove no set of facts in support of their claim which would entitle them to relief.

Anti-SLAPP Analysis

1. As a remedy against the overextension of the Anti-SLAPP special dismissal remedy of G.L.c. 231, §59H, first paragraph, the Supreme Judicial Court has required the “special movant” in attorney Mahlowitz’ position to make “a threshold showing through the pleadings and affidavits that the claims against him are ‘based on’ the petitioning activities alone and have no substantive basis other than or in addition to the petitioning activities.” Duracraft Corporation v. Holmes Products Corp., 427 Mass. 156, 167-68 (1998).
*460 2. Attorney Mahlowitz has not made that showing as of the present. Indeed, it will be difficult to do so in cases in which motivation and intent are material elements of the petitioning activity under examination.
3. A final word may be in order about the use of the Anti-SLAPP motion for dismissal. In the circumstances of this case, we have relatively specific doctrines of tort and immunity at work. The characterization of the present events as a category covered by Anti-SLAPP statutory purposes and language seems somewhat strained. If the petitioning activity is the commencement and conduct of litigation, the common-law remedies for abusive litigation (such as the torts of malicious prosecution of a civil action, and abuse of civil process, and such statutory remedies as G.L.c. 231, §6f), face displacement by the elastic concept of Anti-SLAPP liability and sanctions. It remains uncertain whether the Legislature intended the Anti-SLAPP mechanism to displace those more traditional causes of action. If, as is more likely, the Legislature intended all the existing causes of actions to proceed as harmoniously as possible, I have tried to give them all some effect in the present analysis. The reasoning under both the statute and the common-law doctrine leads to the same conclusion: that the present action should not suffer dismissal at this point and that it should go forward for further exploration of the merits.